|   |   |
|---|---|
| ADAM TODD SAETRUM,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ADA COUNTY SHERIFF GARY RANEY, in his individual capacity, DEPUTY ADA COUNTY SHERIFF JAKE VOGT, in his individual capacity, DEPUTY ADA COUNTY SHERIFF TYLER STENGER, in his individual capacity, DEPUTY ADA COUNTY SHERIFF KEVIN LOUWSMA, in his individual capacity, DEPUTY ADA COUNTY SHERIFF JOHN DOE 1, in his individual capacity, DEPUTY ADA COUNTY SHERIFF JOHN DOE 2, in his individual capacity and DEPUTY ADA COUNTY SHERIFF JANE DOE 1, in her individual capacity,<br><br>　　　　　Defendants. | CIV. NO. 1:13-425 WBS<br><br><u>MEMORANDUM AND ORDER RE: MOTION TO DISMISS; MOTION FOR RECONSIDERATION; MOTION TO STRIKE; and MOTION RE: PERSONAL JURISDICTION</u> |

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

----oo0oo----

----oo0oo----

　　　　Plaintiff Adam Todd Saetrum filed this action under 42 U.S.C. § 1983 based on alleged excessive force and inadequate

1

medical care during his arrest and detention in Ada County, Idaho. The court previously granted defendants' motion to dismiss plaintiff's First Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed a Second Amended Complaint ("SAC"), and defendants again move to dismiss the SAC as insufficiently pled under Rule 12(b)(6).

I.   Factual and Procedural Background

On February 26, 2013, the Ada County Sheriff's Office carried out an undercover purchase of marijuana from plaintiff in the parking lot of the Boise Town Square Mall. (Second Am. Compl. ("SAC") ¶ 14.) The operation involved at least six officers, including defendants Deputy Sheriff Jake Vogt, Deputy Sheriff Tyler Stenger, and Detective Kevin Louwsma. (Id. ¶ 15.) Plaintiff met with the undercover officer in the officer's unmarked car and agreed to sell marijuana to the undercover officer. (Id. ¶ 20.) The undercover officer then left the car and instructed the uniformed officers to arrest plaintiff. (Id.)

Deputies Vogt and Stenger drove their marked patrol cars toward the unmarked car and two other officers drove a marked patrol car toward plaintiff's car. (Id. ¶¶ 21-22.) Plaintiff had exited the unmarked car and was walking toward his car when Deputy Vogt first observed him. (Id. ¶ 24.) Plaintiff was allegedly unarmed as he walked toward his car, which was blocked in by another marked patrol car. (Id. ¶¶ 24-25.) When Deputy Vogt was about thirty feet from plaintiff, he activated his overhead lights. (Id. ¶ 27.) He then allegedly accelerated and hit plaintiff with his left front bumper at a speed of

approximately thirteen miles per hour. (Id.)

After Deputy Vogt's patrol car knocked plaintiff to the ground, plaintiff allegedly stood up and faced Deputy Vogt without making any effort to flee or resist arrest. (Id. ¶ 28.) Deputy Vogt exited his car and allegedly "spun Plaintiff around and threw and/or used his body to drive Plaintiff to the ground." (Id. ¶ 29.)

Despite having witnessed these events, Deputy Louwsma did not indicate that plaintiff needed medical treatment when he completed the Ada County Jail Arresting Officer's Form. (Id. ¶¶ 32-33.) Deputy Stenger also allegedly witnessed the incidents and did nothing to ensure plaintiff received medical care. (Id.) During plaintiff's detention, he was allegedly limping and vomiting, had a visibly swollen knee, and became increasingly confused and disorientated. (Id. ¶¶ 34-35.) After plaintiff's father and attorney met with him and expressed concerns about plaintiff's need for medical treatment, plaintiff's father was allegedly assured by an unidentified female deputy sheriff that plaintiff would receive medical care. (Id. ¶ 37.) Plaintiff, however, never received medical care during his detention.

In his Second Amended Complaint, plaintiff asserts three claims: (1) a § 1983 claim against Deputy Vogt for violation of substantive due process; (2) a § 1983 claim against Deputy Vogt and defendant Ada County Sheriff Gary Raney for excessive force in violation of the Fourth Amendment; and (3) a § 1983 claim against Deputies Vogt, Stenger, Louwsma, and Sheriff Gary Raney for failure to provide medical care in violation of the Fourteenth Amendment. After the court granted defendants'

3

motion to dismiss plaintiff's curt and conclusory First Amended Complaint, plaintiff filed the SAC with significantly more factual allegations.

Defendants now move to dismiss the SAC pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff also moves for reconsideration of the court's refusal to consider his claims against "Doe" defendants in the May 22, 2014 Order, and defendants move to strike an affidavit submitted in support of that motion. Lastly, plaintiff has filed a "motion for a ruling" as to whether defendants have waived service of process and consented to personal jurisdiction.

II. Analysis

On a motion to dismiss under Rule 12(b)(6), the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely consistent with a defendant's liability," it "stops short of the line between possibility and plausibility." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

    A.    Claims Against the Deputy Defendants

        1.    Violation of Substantive Due Process

In the May 22, 2014 Order, the court discussed plaintiff's § 1983 claim based on an alleged violation of his right to substantive due process in light of County of Sacramento v. Lewis, 523 U.S. 833 (1998). In that case, officers accidentally hit and killed a passenger during a high speed chase and the court concluded the conduct was assessed under the "shocks the conscience" standard governing violations of substantive due process. Lewis, 523 U.S. at 846-47.

Under Lewis, the standard used to determine whether conduct "shocks the conscience" depends on "whether the officers had the opportunity for actual deliberation." Porter v. Osborn, 546 F.3d 1131, 1138 (9th Cir. 2008). "Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience." Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010). "On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." Id.

Here, although the parties dispute what standard should govern plaintiff's claim, it would be premature for the court to determine whether Deputy Vogt had time to deliberate at the pleading stage because that inquiry is entirely fact-driven. Taken in the light most favorable to plaintiff, plaintiff was unarmed, cornered in by other patrol cars, and not attempting to flee or resist arrest. Deputy Vogt nonetheless aimed his car in plaintiff's direction and accelerated toward him, ultimately hitting plaintiff in the knee and causing him to fall. These

allegations give rise to at least a plausible violation of plaintiff's substantive due process rights under either standard. The court will therefore deny Deputy Vogt's motion to dismiss the claim.

        2.    Fourth Amendment Violation

In his second claim, plaintiff alleges that Deputy Vogt used excessive force when he hit plaintiff with his patrol car and subsequently threw him to the ground. Use of force violates the Fourth Amendment only if it is objectively unreasonable, which is a question of fact requiring consideration of factors such as "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resists detention or attempts to escape." Liston v. County of Riverside, 120 F.3d 965, 976 (9th Cir. 1997) (citing Graham v. Connor, 490 U.S. 386, 388 (1989)).

With respect to the use of his patrol car to hit plaintiff, Deputy Vogt's only argument is that the conduct does not come within the Fourth Amendment. Deputy Vogt contends that, because plaintiff was able to stand up after the patrol car hit his leg, the impact from the patrol car did not amount to a "seizure." See generally Lewis, 523 U.S. at 844 (explaining that a plaintiff must be seized to give rise to a Fourth Amendment violation and that a "seizure" requires "'a governmental termination of freedom of movement through means intentionally applied.'" (quoting Brower v. County of Inyo, 489 U.S. 593, 596–597 (1989) (emphasis omitted))).

Plaintiff alleges, however, that upon standing, he

stood "next to the front left tire of the police cruiser" and "turned towards Defendant instead of doing anything to indicate he would flee or resist arrest." (SAC ¶¶ 28-29.) Taken in the light most favorable to plaintiff, hitting plaintiff with the patrol car successfully terminated plaintiff's freedom of movement because plaintiff ceased walking and remained in the same location. Plaintiff's theory of unreasonable force based on Deputy Vogt's use of his patrol car is therefore sufficient to withstand dismissal.[1]

In stark contrast to the lack of factual allegations in the FAC, plaintiff's SAC also contains sufficient allegations to state a cognizable Fourth Amendment violation based on Deputy Vogt having thrown plaintiff to the ground during the arrest. For example, the SAC alleges that plaintiff had committed a non-violent crime and was unarmed, cornered in by other patrol cars and deputies, and neither resisting arrest nor attempting to flee. Taking these facts in the light most favorable to plaintiff, plaintiff has stated a plausible claim that Deputy Vogt used excessive force when he threw plaintiff to the ground after having just knocked him to the ground with his patrol car.

### 3. Failure to Provide Medical Treatment

When an individual has "not been convicted of a crime,

---

[1] Ultimately, whether the constitutionality of Deputy Vogt's use of his patrol car is assessed under the Fourth Amendment or Fourteenth Amendment will depend on whether he intentionally or accidentally struck plaintiff with his patrol car. See generally Lewis, 523 U.S. at 844. The SAC pursues both theories in the alternative and, based on the factual allegations in the SAC, both theories are plausible and sufficient to state a claim.

7

but ha[s] only been arrested, his rights derive from the due process clause rather than the Eighth Amendment's protection." Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). Nonetheless, "[w]ith regard to medical needs, the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: 'persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs.'" Id. (quoting Carnell v. Grimm, 74 F.3d 997, 979 (9th Cir. 1996)) (second alteration in original). "Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person 'knows of and disregards an excessive risk to inmate health and safety.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)); see also Farmer, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

The only allegations in the SAC about Deputies Vogt, Stenger, and Louwsma's knowledge of plaintiff's serious medical needs are that they were "aware of Defendant Vogt's use of force and Plaintiff's resulting injuries," (SAC ¶ 68), and "knew that Defendant Vogt's use of force during Plaintiff's arrest had caused Plaintiff's injuries," (id. ¶ 66). These conclusory allegations lack factual support. For example, the SAC does not allege that Deputy Vogt's alleged use of force caused injuries that were immediately apparent or that plaintiff complained to any of those three deputies about his injuries. According to the

8

SAC, plaintiff's injuries did not physically manifest until "[b]etween two and three hours after his arrest" when he was booked into Ada County Jail. (Id. ¶ 34; see id. ¶¶ 34-35 ("As part of the booking process, Plaintiff was stripped searched and, . . . Plaintiff was limping and his knee had become visibly swollen . . . . Over the next three to four hours, Plaintiff became increasingly confused, disoriented and ill as a result of his head injury.").) Accordingly, because the SAC fails to plead sufficient factual allegations rendering it plausible that Deputies Vogt, Stenger, and Louwsma had knowledge of his serious medical needs, the court must grant their motion to dismiss plaintiff's third claim.

B. Supervisor Liability Claims Against Sheriff Raney

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011). The Ninth Circuit has stated that supervisors may be held liable under § 1983 under the following theories:

> "(1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3)

9

for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a 'reckless or callous indifference to the rights of others.'"

Moss v. U.S. Secret Serv., 675 F.3d 1213, 1231 (9th Cir. 2012) (quoting al-Kidd v. Ashcroft, 580 F.3d 949, 965 (9th Cir. 2009), rev'd on other grounds, Ashcroft v. al-Kidd, 131 S. Ct. 2074 (2011)).[2]

In his second and third claims against Sheriff Raney, plaintiff alleges that the constitutional violations occurred as a result of Sheriff Raney's "failure to properly train, supervise and control" the deputy defendants. (SAC ¶¶ 59, 70.) These allegations, however, lack any factual support and are therefore insufficient under Iqbal. See, e.g., Henry A. v. Willden, 678 F.3d 991, 1004 (9th Cir. 2012) (finding allegations regarding supervisor liability insufficient because, inter alia, the Complaint failed to allege that the supervisors "had any personal knowledge of the specific constitutional violations that led to

---

[2] The Ninth Circuit's enumeration of cognizable theories of liability against a supervisor preceded Iqbal, which clarified that a supervisor could be held liable only "through the official's own individual actions," Iqbal, 556 U.S. at 676. The plaintiffs in Moss alleged § 1983 claims based on Fourth Amendment violations and the Ninth Circuit recognized that, because al-Kidd was decided pre-Iqbal, the "extent to which its supervisory liability framework is consistent with that decision and remains good law has been debated." Moss, 675 F.3d at 1231 n.6 (citing al-Kidd, 598 F.3d at 1141 (O'Scannlain, J., dissenting from denial of rehearing en banc); Bayer v. Monroe Cnty. Children & Youth Servs., 577 F.3d 186, 191 n.5 (3d Cir. 2009); Maldonado v. Fontanes, 568 F.3d 263, 274 n.7 (1st Cir. 2009)). The Ninth Circuit nonetheless declined "to consider that debate" because the plaintiffs did not "allege sufficient facts to meet the standard set forth in al-Kidd." Id. Similar to Moss, the court recognizes the uncertainty of the supervisor liability standard governing Fourth Amendment claims, but need not resolve the issue because plaintiff's allegations are factually insufficient under any of the potential theories.

Plaintiffs' injuries"); Moss, 675 F.3d at 1231 ("[T]he protestors claim that 'the use of . . . excessive force against them' was 'the result of inadequate and improper training, supervision, instruction and discipline . . . .' However, this allegation is [] conclusory. The protestors allege no facts whatsoever about the officers' training or supervision, nor do they specify in what way any such training was deficient."); Hydrick v. Hunter, 669 F.3d 937, 941-42 (9th Cir. 2012) (contrasting the "bald" and "conclusory" factual allegations in plaintiffs' complaint with the detailed factual allegations in Starr).

Plaintiff's second theory of Sheriff Raney's liability rests entirely on Sheriff Raney's inaction after the alleged constitutional violations occurred. Plaintiff alleges that Sheriff Raney failed to investigate the alleged violations or discipline the deputies and thereby "condoned and ratified" their conduct. (SAC ¶¶ 60, 71.) As factual support for these allegations, the SAC alleges that Sheriff Raney allowed deputies to complete inaccurate supplement reports after plaintiff's concussion was discussed during his criminal proceedings and that Sheriff Raney did not take any action to investigate or prevent destruction of certain records after he learned of the alleged violations in the criminal proceedings. (Id. ¶¶ 38, 40.)

Even assuming that the SAC contains sufficient factual allegations supporting this theory, Sheriff Raney's inaction occurring exclusively after the alleged violations cannot plausibly allege "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr, 652 F.3d at 1207. Although the Ninth Circuit has upheld

supervisor liability based on the supervisor's "knowledge of and acquiescence in unconstitutional conduct by his or her subordinates," the plaintiff must still show that "the supervisor breached a duty to plaintiff which was the proximate cause of the injury." Id.

Assuming Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991) is still good law post-Iqbal, it does not stand for the proposition that a supervisor's mere acquiescence in or ratification of the conduct giving rise to plaintiff's claim is sufficient to hold that supervisor personally liable. In Larez, the plaintiffs submitted evidence from a two-year study showing that an environment of rejecting citizens' complaints existed before the officers used excessive force against the plaintiffs and thereby caused the officers to believe that their use of excessive force would be tolerated. Larez, 946 F.2d at 635-36, 646-47; see also Blankenhorn v. City of Orange, 485 F.3d 463, 485-86 (9th Cir. 2007) (relying on the two-year study to explain why the Larez court upheld the jury verdict against the supervisor). A supervisor's conduct is therefore sufficient to "establish the requisite causal link only when the supervisor engaged in at least some type of conduct before the unconstitutional incident and the supervisor knew or should have known that his conduct could cause the constitutional violation the plaintiff suffered." Jones v. County of Sacramento, Civ. No. 2:09-1025 WBS DAD, 2010 WL 2843409, at *7 (E.D. Cal. July 20, 2010); see also Starr, 652 F.3d at 1208 (discussing cases).

Accordingly, because plaintiff's allegations in his second and third claims are insufficient to state a plausible

12

claim against Sheriff Raney, the court will grant his motion to dismiss those claims.

    C.    "Doe" Defendants

In his FAC, plaintiff alleged certain claims against "Doe" defendants and the court declined to consider those claims in the May 22, 2014 Order because "the use of 'Doe' pleading is improper, since there is no provision in federal rules permitting use of fictitious defendants." May v. Williams, Civ. No. 2:10-576 GMN LRL, 2012 WL 1155390, at *2 n.1 (D. Nev. Apr. 4, 2012). The SAC nonetheless seeks to bring claims against three "Doe" defendants and plaintiff requests that the court allow him to proceed against these unidentified officers until he can discover their identity during discovery. As the court explained at oral argument, the Federal Rules of Civil Procedure do not provide for "Doe" pleading and Rules 15 and 16 provide the procedures for plaintiff to amend his complaint upon discovering the identity of any unknown defendants. It is also questionable whether adhering to the federal rules would result in any meaningful difference because "the relation back provisions of state law, rather than Rule 15(c), govern a federal cause of action pursuant to 42 U.S.C. § 1983." Merritt v. County of Los Angeles, 875 F.2d 765, 768 (9th Cir. 1989). Accordingly, the court will not address any claims against "Doe" defendants and will deny plaintiff's motion for reconsideration of its May 22, 2014 Order.

    D.    Service of Process and Personal Jurisdiction

In a somewhat unusual motion, plaintiff seeks "a ruling" as to whether defendants have waived the requirement of service of process and consented to personal jurisdiction.

Defendants have not filed any motion challenging the sufficiency of service. The court does not give advisory rulings and will therefore deny plaintiff's motion. E.g., United States v. Windsor, 133 S. Ct. 2675, 2711-12 (2013).

IT IS THEREFORE ORDERED that

(1) defendants' motion to dismiss the Second Amended Complaint (Docket No. 44) be, and the same hereby is, DENIED as to plaintiff's first and second claims against Deputy Vogt and GRANTED as to plaintiff's second claim against Sheriff Raney and plaintiff's third claim against all defendants;

(2) plaintiff's motion for reconsideration of the court's May 22, 2014 Order (Docket No. 43) be, and the same hereby is, DENIED;

(3) defendants' motion to strike the affidavit of Rodney Saetrum submitted in support of plaintiff's motion for reconsideration (Docket No. 45) be, and the same hereby is, DENIED AS MOOT; and

(4) plaintiff's motion for a ruling regarding service and personal jurisdiction (Docket No. 55) be, and the same hereby is DENIED; and

(5) the stay of discovery imposed in the May 22, 2014 Order[3] is LIFTED.

Plaintiff has twenty days from the date this Order is signed to file a Third Amended Complaint, if he can do so consistent with this Order.

---

[3] In the May 22, 2014 Order, the court granted defendants' motion to stay all discovery "until resolution of defendants' motion to dismiss any Second Amended Complaint." (May 22, 2014 Order at 10:22-23.)

14

Dated: August 25, 2014

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE